PRYOR CASHMAN LLP
Richard Levy, Jr.
Conrad K. Chiu
7 Times Square
New York, NY 10036-6569
Tel:    (212) 421-4100
Fax:    (212) 326-0806
rlevy@pryorcashman.com
cchiu@pryorcashman.com

*Attorneys for Megan E. Noh,*
*Chapter 11 Trustee of P8H, Inc.,*
*d/b/a Paddle 8, Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
In re:

P8H, INC., d/b/a PADDLE 8,

      Debtor.
---------------------------------------------------------x

MEGAN E. NOH, in her capacity as the Chapter 11 Trustee of P8H, INC., d/b/a PADDLE 8,

      Plaintiff,

   - against –

FBNK FINANCE S.à.r.l.,

      Defendant.
---------------------------------------------------------x

Chapter 11

Case No. 20-10809 (smb)

Adv. Proc. No. 20-_____ (smb)

## COMPLAINT

Megan E. Noh, solely in her capacity as the Chapter 11 Trustee ("Trustee") appointed for the bankruptcy estate of debtor P8H, Inc., d/b/a Paddle 8 (the "Debtor" or "P8H"), and not individually, alleges against defendant FBNK Finance S.à.r.l. ("FBNK" or "Defendant"), on

1

knowledge (except Paragraphs 8, 13-19, 21, 24, 27, 40, and 60-67, which are alleged on information and belief):

## NATURE OF ADVERSARY PROCEEDING

1. In this adversary proceeding, the Trustee, as plaintiff, seeks a determination that a lien and security interest asserted by the Defendant is invalid and unenforceable for the following reasons: (a) Defendant does not hold a properly perfected lien in the property of the Debtor, a Delaware corporation, or any proceeds of such property as security for a pre-petition loan to the Debtor by reason of the absence of a Uniform Commercial Code ("UCC") financing statement filed with the proper recording officer in the State of Delaware; (b) Defendant does not hold a valid and enforceable security interest in the personal property of the Debtor by reason of the inadequate descriptions of the alleged collateral in both the loan documents and in the improperly-filed UCC financing statement; (c) alternatively, even if the descriptions of the collateral were sufficient, Defendant never acquired an enforceable, perfected lien or security interest in any cash of or held by the Debtor by reason of Defendant's failure to properly perfect a possessory lien against cash or equivalent assets by means of actual control over, or dominion or possession of such cash; and (d) alternatively even if there was a basis to conclude that, under applicable non-bankruptcy law, the lien had validity, the purported perfection of the lien by the filing of the UCC financing statement occurred within one year before the commencement of the Debtor's bankruptcy case, and is thereby avoidable under the Bankruptcy Code as a preference made to an insider of the Debtor.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this proceeding in accordance with 28 U.S.C. §§ 157 and 1334(b). Venue is properly laid in this district pursuant to 28 U.S.C. § 1409(a).

3. This adversary proceeding is a core proceeding that may be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

4. Pursuant to Rule 7008 of the Bankruptcy Rules, the Trustee consents to entry of final orders and judgments by the Bankruptcy Court in this adversary proceeding.

**PARTIES**

5. The Trustee, as plaintiff, is the duly appointed and qualified Chapter 11 trustee for the Debtor and its Chapter 11 estate.

6. The Trustee has standing to commence and maintain this adversary proceeding with respect to challenges against FBNK's alleged secured claim and lien pursuant to the orders authorizing the Trustee to use cash in the Debtor's estate that is alleged to be collateral of FBNK, entered by the Bankruptcy Court on May 20, 2020, June 10, 2020, and July 30, 2020 (ECF Nos. 56, 85, and 127), and as a result of the Trustee being appointed in place of the debtor-in-possession.

7. The Debtor is a Delaware corporation that maintained its principal office at all relevant times prior to March 16, 2020, in New York, New York.

8. Defendant FBNK is a Luxembourg limited liability company. FBNK has appeared and participated in this bankruptcy case through counsel of record. FBNK also has engaged in business in the State of New York and/or transacted business with the Debtor in the State of New York concerning and giving rise to the subject matter of this adversary proceeding and the claims alleged in this complaint.

**PROCEDURAL BACKGROUND**

9. On March 16, 2020 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") (ECF No. 1) for relief under chapter 11 of title 11, United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). From that date until the appointment of the Trustee, the Debtor held its assets and

3

managed its business and affairs as a debtor in possession under Section 1107 of the Bankruptcy Code.

10. On April 15, 2020, the Office of the United States Trustee for this District (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") (ECF No. 23).

11. Following the resignation of the last member of the Debtor's board of directors in or about late February or early March, 2020, the Court on April 30, 2020, directed the appointment of a Chapter 11 trustee in this bankruptcy case (ECF No. 36).

12. On May 8, 2020, the U.S. Trustee filed an application for an order approving the appointment of the Trustee (ECF No. 42). On the same day, this Court entered an order approving the appointment of the Trustee (ECF No. 43). The Trustee thereafter qualified as Trustee and filed her bond in the Bankruptcy Court.

## BACKGROUND FACTS

13. From and after its formation in or about 2017, the Debtor operated a business that was engaged in facilitating the sales of art works, collectibles and experiences (such as exclusive access at sports and/or entertainment events) through an online platform that hosted sales in both auction (*i.e.,* competitive bidding) and "storefront" (*i.e.,* fixed price per unit of merchandise) formats.

14. On or about March 8, 2019, the Debtor and Oakley Capital International AG, a Swiss joint-stock company ("Oakley") entered into, inter alia, a Secured Loan Agreement (as at any time amended, the "Loan Agreement"), under which Oakley agreed to lend to the Debtor the

4

principal sum of $10,000,000.00 (the "Term Loan").[1] A true copy of the Loan Agreement is attached as **Exhibit "1"** and is incorporated by reference.

15. On or about February 12, 2019, for the purpose of evidencing the indebtedness due to Oakley in connection with the Term Loan, the Debtor made, executed, acknowledged, and delivered to Oakley a promissory note in the original principal amount of $10,000,000.00 (the "Note"), under which the Debtor was bound and promised to pay to Oakley said sum, with interest thereon, all in accordance with the terms of the Note. A true copy of the Note is annexed as Exhibit A to the Loan Agreement attached as **Exhibit "1"**.

16. To secure the obligations of the Debtor to Oakley under the Loan Agreement and the Note, the Loan Agreement provided that the Debtor pledged "[a]ll assets of Borrower including, without limitation, Paddle8 brand, URL address and social networks presence, as well as Paddle8 digital products and their underlying source code, servers as well as all of the Paddle8 fixed assets and customer databases (collectively the 'Collateral') of Borrower.... (Exh. 1 at § 1.4).

17. On or about March 15, 2019, Oakley and Stockaccess Holdings SAS, a French joint stock company ("SAH"), entered into an Assignment and Assumption Agreement (the "SAH Assignment Agreement"), under which Oakley transferred, conveyed, assigned, and delivered to SAH, and SAH acquired, all of Oakley's right, title, and interest in and to the Loan Agreement, the Term Loan and the Note. A true copy of the SAH Assignment Agreement is attached as **Exhibit "2"** and is incorporated by reference. Pursuant to the SAH Assignment Agreement, SAH accepted assignment of the Loan Agreement, the Term Loan and the Note from Oakley and

---

[1] The actual amount of new financing made available to the Debtor under the Loan Agreement was $4,200,000 after deducting amounts owed by the Debtor to Oakley under a previous Convertible Loan Subscription Agreement dated December 12, 2017, accrued interest, and various fees related to the Term Loan.

assumed any and all right, title, and interest transferred, conveyed, assigned, and delivered by Oakley.

18. On August 1, 2019, Highlight Finance Corp. ("Highlight"), a British Virgin Islands company affiliated with SAH, sent a letter to P8H requesting that P8H, as debtor, file a UCC financing statement relating to the Term Loan (the "HFC Letter"). The HFC Letter further stated that on August 1, 2019, Oakley had assigned the Term Loan to Highlight. A true copy of the HFC Letter is attached as **Exhibit "3"** and is incorporated by reference.

19. Notwithstanding the assertion in the HFC Letter, P8H was not provided with any notice or record of SAH having assigned the Loan Agreement, Term Loan, or Note back to Oakley at any time after the execution of the SAH Assignment Agreement on March 15, 2019.

20. On October 30, 2019, P8H, as debtor, filed or caused the filing of a UCC financing statement with the Secretary of State of the State of New York ("NYSOS") in favor of SAH as secured party. A true copy of the UCC financing statement filed with the NYSOS is attached as **Exhibit "4"** and is incorporated by reference.

21. At the time of the recording of the UCC financing statement with the NYSOS, SAH directly or indirectly held shares of P8H that made it an "insider" of P8H (as such term is defined in the Bankruptcy Code), or was an affiliate of FaceBank Group. Inc., a Florida company, and/or FaceBank AG, a Swiss company, each of which was directly or indirectly an insider of P8H by reason of the holding of shares of P8H. Accordingly, SAH was, in turn, an insider of P8H.

22. As of the Petition Date, no UCC financing statement had been filed in Delaware in favor of SAH.

23. In its schedules of assets and liabilities filed with the Bankruptcy Court (ECF No. 20), the Debtor scheduled SAH as the holder of an unliquidated secured claim in the face amount of $8,538,982.20, but did not state any value of collateral supporting the claim.

6

24. On or about March 31, 2020, SAH and FBNK entered into an Assignment and Assumption Agreement (the "FBNK Assignment Agreement"), under which, in full satisfaction of a certain loan previously made by FBNK to SAH, SAH assigned to FBNK, and FBNK acquired, among other things, all SAH's right, title, and interest in the Loan Agreement, Term Loan and the Note, and the purported lien in collateral of P8H. A true copy of the FBNK Assignment Agreement is attached as **Exhibit "5"** and is incorporated by reference.

## CLAIMS FOR RELIEF

## COUNT 1

**(Declaration of the Lack of a Perfected Lien in Favor of
FBNK Against Personal Property of the Debtor by Recording)**

25. The Trustee repeats and realleges each and every allegation contained above as if set forth at length.

26. The Debtor was incorporated on January 20, 2017, under the laws of the State of Delaware, and was a Delaware corporation at all times from the time of its incorporation to and including the Petition Date. A true copy of a certificate of good standing as of August 12, 2020, issued by the Secretary of State of the State of Delaware (the "Delaware SOS"), is attached as **Exhibit "6"** and is incorporated by reference.

27. The Debtor maintained its principal business office in New York at all times from the time of its incorporation to and including the Petition Date.

28. Section 9-307(e) in each of the Delaware UCC and the New York UCC provides that "[a] registered *organization that is organized under the law of a State is located in that State*." UCC § 9-307(e) (emphasis added). Thus, for purposes of Article 9 of the UCC, Debtor was located in Delaware at all relevant times prior to and including the Petition Date.

29. In turn, Section 9-301(1) in each of the Delaware UCC and the New York UCC provides that "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs

7

perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." *Id.* § 9-301(1). As such, Delaware law applies to perfection of a lien against the Debtor's property.

30. Finally, under Section 9-310(a) in each of the Delaware UCC and the New York UCC provides that "a financing statement must be filed to perfect all security interests." *Id.* § 9-310(a).

31. Although a UCC financing statement was filed against P8H in New York, neither FBNK nor any of its predecessors in interest under the Loan Agreement, Term Loan and the Note filed or caused the filing of a financing statement in Delaware to perfect a security interest in any property of the Debtor. A true copy of a UCC search report as of August 12, 2020, issued by the Delaware SOS is attached as **Exhibit "7"** and is incorporated by reference. Consequently, FBNK's purported lien is unperfected with respect to any collateral for which filing is necessary to perfect a security interest.

32. Section 544(a) of the Bankruptcy Code grants the Trustee, among other things, the rights and powers of: (i) "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists"; (ii) "a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists"; and (iii) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchase exists." 11 U.S.C. § 544(a).

33. Pursuant to Section 544(a) of the Bankruptcy Code, the interest of the Debtor's estate in all of the Debtor's property is superior to unperfected interests of Defendant, such that any and all claimed security interests and liens of FBNK in the Debtor's property are avoidable.

34. As a result of the absence of a properly filed UCC financing statement of record with the required recording officer in Delaware in favor of Oakley, SAH, Highlight, or FBNK, as successor to the right, title, and interest of SAH as secured party, FBNK does not hold a properly perfected lien in any personal property or collateral of the Debtor as to which a filing was required to perfect a lien.

35. By reason of Section 544(a) of the Bankruptcy Code, the Trustee's statutory rights (or, prior to the appointment of the Trustee, the Debtor's rights as debtor-in-possession) as a lien creditor of the Debtor as of the Petition Date are superior in all respects to the alleged lien of FBNK, as successor secured party, in the personal property and collateral of P8H purportedly covered by FBNK's alleged lien as to which a filing was required to perfect the lien.

36. An actionable controversy exists between the parties regarding their respective rights relating to the alleged lien and collateral rights asserted by FBNK.

37. The Trustee has no adequate remedy at law.

38. Accordingly, the Trustee is entitled to judgment under Sections 506, 544, 550 and 551 of the Bankruptcy Code declaring that FBNK holds no valid and enforceable lien against any property of the Debtor and, in turn, its estate, and preserving the alleged lien for the benefit of the Trustee and the Debtor's estate under Section 551 of the Bankruptcy Code.

## COUNT 2

**(Declaration of the Lack of a Perfected Security Interest in Favor of
FBNK by Possession or Control of Cash and Deposit Accounts of the Debtor)**

39. The Trustee repeats and realleges each and every allegation contained above as if set forth at length.

40. Under the Loan Agreement, FBNK and its predecessors in interest under the agreement purportedly acquired collateral rights in cash of P8H, and deposit accounts of P8H, including any cash proceeds of other property of P8H pledged to the lender as collateral.

41. At all relevant times, P8H maintained its bank deposit accounts with Wells Fargo Bank N.A., a federally-chartered national banking institution ("WF"), and Signature Bank, a New York banking institution ("Signature", and together with WF Bank, the "Banks").

42. Under Section 9-304 in each of the Delaware UCC and the New York UCC the local law of the bank's jurisdiction determines the law governing perfection, the effect of perfection and priority of deposit accounts.

43. Under Section 9-312(b)(1) in each of the Delaware UCC and the New York UCC (excluding than certain exceptions inapplicable here), a security interest in a deposit account may be perfected only by control in accordance with Section 9-314 of the Delaware UCC and the New York UCC.

44. Under Section 9-314 in each of the Delaware UCC and the New York UCC, a security interest in deposit accounts may be perfected by control. Section 9-104 in each of the Delaware UCC and the New York UCC provides, in turn, that (excluding one exception inapplicable here), control of a deposit account is obtained either by the debtor, the secured party and the bank having agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor, or the secured party becomes the bank's customer with respect to the deposit account.

45. Regardless of what state's law governs, including (if any) states other than New York and Delaware that may be applicable, neither FBNK nor any of its predecessors in interest under the Loan Agreement, Term Land and the Note took control of any deposit account of P8H,

10

either directly or by means of a written agreement among P8H, FBNK or any of its predecessors in interest under the Loan Agreement, Term Loan and the Note, and either or both of the Banks.

46. Under Section 9-313 in each of the Delaware UCC and the New York UCC, a security interest in cash is perfected by possession.

47. Regardless of what state's law governs, including states other than New York and Delaware that may be applicable, neither FBNK nor any of its predecessors in interest under the Loan Agreement, Term Land and the Note ever took actual possession of the cash or any deposit accounts of P8H.

48. An actionable controversy exists between the parties regarding their respective rights relating to the alleged lien and collateral rights asserted by FBNK in the Debtor's cash and deposit accounts.

49. The Trustee has no adequate remedy at law.

50. Accordingly, the Trustee is entitled to judgment under Sections 506, 544, 550 and 551 of the Bankruptcy Code declaring that FBNK holds no valid and enforceable lien against any cash of the Debtor and, in turn, its estate, and preserving the alleged lien for the benefit of the Trustee and the Debtor's estate under Section 551 of the Bankruptcy Code.

## COUNT 3

**(Declaration of the Lack of a Properly Enforceable Security Interest in Favor
of FBNK Against Inventory, Accounts and Deposit Accounts of the Debtor)**

51. The Trustee repeats and realleges each and every allegation contained above as if set forth at length.

52. Even if a lien somehow had been properly perfected in favor of FBNK with respect to the Term Loan and personal property of P8H, the granting language for collateral under the provisions of the Loan Agreement between P8H and Oakley (the original lender and predecessor in interest to SAH and, in turn, FBNK), is insufficient to describe the collateral identified in the

11

filed UCC financing statement filed in New York and, accordingly, is insufficient to support a security interest in such collateral.

53.     The only relevant document that purports to grant a security interest to Oakley (to which, in turn, SAH and, later, FBNK succeeded) is the Loan Agreement between the Debtor and Oakley. The security grant in that document identified the collateral as:

> All assets of Borrower including, without limitation, Paddle8 brand, URL address and social networks presence, as well as Paddle8 digital products and their underlying source code, servers as well as all of the Paddle8 fixed assets and customer databases.

54.     This description in the Loan Agreement does not adequately identify the collateral of the Debtor over which a security interest was to be granted for purposes of Section 9-108(c) of the Uniform Commercial Code as adopted in Delaware.

55.     Moreover, the description of the collateral in the Loan Agreement does not refer to inventory, accounts and deposit accounts of the Debtor listed as collateral. Accordingly, FBNK's purported security interest is not sufficient under the Uniform Commercial Code as adopted in Delaware to create a security interest or lien against inventory, accounts and deposit accounts of the Debtor, which, as a result, did not become collateral securing any obligations of the Debtor under the Loan Agreement. Therefore, a lien in the Debtor's inventory, accounts and deposit accounts could not be perfected merely by the inclusion of such words in the UCC financing statement.

56.     An actionable controversy exists between the parties regarding their respective rights relating to the alleged lien and collateral rights asserted by FBNK in the Debtor's inventory, accounts and deposit accounts.

57.     The Trustee has no adequate remedy at law.

58.     Accordingly, the Trustee is entitled to judgment under Sections 506, 544, and 551 of the Bankruptcy Code declaring that FBNK holds no valid and enforceable security interest or

lien in or against any inventory, accounts and deposit accounts of the Debtor and the proceeds of such property and, in turn, its estate, and preserving the alleged lien for the benefit of the Trustee and the Debtor's estate under Section 551 of the Bankruptcy Code.

## COUNT 4

**(Avoidance of Alleged Lien of FBNK as a Preference Under 11 U.S.C. § 547)**

59. The Trustee repeats and realleges each and every allegation contained above as if set forth at length.

60. By entering into the Loan Agreement, Term Loan and Note, P8H incurred a debt to Oakley for the obligations due under the Term Loan at the time the Loan Agreement was executed in March 2019.

61. SAH, as successor to Oakley with respect to the Loan Agreement, Term Loan and Note, purported to perfect a lien in assets of P8H upon the filing of the UCC-1 financing statement on October 30, 2019, described above.

62. To the extent, if any, that the filing of the UCC financing statement with the NYSOS perfected (or purported to perfect) a lien in property of the Debtor in favor of SAH, as successor to Oakley, the act of perfecting a lien constituted a "transfer" of an interest in property of the Debtor (as such term is defined in the Bankruptcy Code) (the "Transfer").

63. The Transfer in favor of SAH was on account of the antecedent debt owed by P8H to SAH under the Loan Agreement, Term Loan and Note.

64. The Transfer was made to SAH as an insider of P8H within one year preceding the Petition Date.

65. P8H was insolvent at the time of the Transfer.

13

66. FBNK was an insider of the Debtor at the time it acquired SAH's right, title and interest in the Term Loan, Note, and the Loan Agreement, including the benefit of the alleged lien against P8H, and succeeded to all right, title and interest of SAH.

67. The Transfer, if valid, would enable FBNK, as successor to SAH, to receive more than FBNK would receive if the Debtor's bankruptcy case was a case under Chapter 7 of the Bankruptcy Code, the Transfer had not been made, and FBNK received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

68. Accordingly, the Trustee is entitled to a judgment against FBNK avoiding the Transfer under Sections 547 and 550 of the Bankruptcy Code, and preserving the alleged lien for the benefit of the Trustee and the Debtor's estate under Section 551 of the Bankruptcy Code.

69. The Trustee intends to continue her review of transactions between FBNK and its predecessors, and reserves all rights, remedies, and claims against FBNK, including, without limitation, the right to commence further adversary proceedings seek to avoid any payments of cash or transfers of alleged collateral to such parties as avoidable transfers under applicable law.

## COUNT 5

**(Disallowance of Claims of FBNK Under 11 U.S.C. § 502(d))**

70. Plaintiff hereby realleges each of the proceeding paragraphs as if fully set forth herein.

71. FBNK is an entity from which property is recoverable under Section 550 of the Bankruptcy Code.

72. FBNK is the holder of the lien that is avoidable under Section 544 of the Bankruptcy Code, and the transferee of the Transfer that is avoidable under Section 547 of the Bankruptcy Code.

14

73. FBNK has not turned over the property transferred, for which FBNK is liable under Section 550 of the Bankruptcy Code.

74. Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of FBNK against the Debtor's estate shall be disallowed until such time as FBNK has turned over such property for which Defendant is liable under Section 550 if the Bankruptcy Code.

## PRAYER FOR RELIEF

**WHEREFORE**, the Trustee demands judgment against FBNK:

A. On Count 1, granting a declaratory judgment under Sections 506, 544 and 551 of the Bankruptcy Code that defendant FBNK does not hold a valid, properly perfected and enforceable lien against any property of the Debtor and, in turn, the Debtor's estate;

B. On Count 2, granting a declaratory judgment under Sections 506, 544, and 551 of the Bankruptcy Code that defendant FBNK does not hold a valid, properly perfected and enforceable security interest in or against any cash and deposit accounts of the Debtor and, in turn, its estate;

C. On Count 3, granting a declaratory judgment under Sections 506, 544, and 551 of the Bankruptcy Code that defendant FBNK does not hold a valid, properly perfected and enforceable security interest in or against inventory, accounts and deposit accounts of the Debtor and the proceeds of such property and, in turn, its estate;

D. On Count 4, granting a judgment under Sections 547 and 550 of the Bankruptcy Code avoiding the alleged lien of defendant FBNK;

E. On Count 5, granting a judgment under Section 502(d) of the Bankruptcy Code disallowing the claims of defendant FBNK;

F. Granting judgment preserving the alleged lien of FBNK for the benefit of the Trustee and the Debtor's estate under Section 551 of the Bankruptcy Code;

15

G. Granting a permanent injunction enjoining and restraining FBNK, any person or entity acting on behalf of or in concert with FBNK and any person or entity claiming any right, title or interest under or through FBNK, from enforcing or seeking to enforce the alleged security interest and lien under the Loan Agreement, the Term Loan and the Note; and

H. Granting such other, further and different relief in favor of the Trustee as the Court deems just and proper, including the costs and expenses of this adversary proceeding.

Dated: New York, New York
August 26, 2020

          PRYOR CASHMAN LLP

          By: */s/ Richard Levy, Jr.*
               Richard Levy, Jr.
               Conrad K. Chiu
          7 Times Square
          New York, New York 10036-6569
          Tel: (212) 421-4100
          Fax: (212) 326-0806
          rlevy@pryorcashman.com
          cchiu@pryorcashman.com

          *Attorneys for Megan E. Noh, Chapter 11*
          *Trustee of P8H, Inc., d/b/a Paddle 8, Plaintiff*